IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

JONATHAN MICHAELS,

                PLAINTIFF,

                vs

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE OFFICER
YEOMAN CASTRO, Shield # 04705, NEW YORK
CITY POLICE OFFICERS "JOHN and JANE
DOES", 10th AVENUE HOSPITALITY GROUP
LLC, MELISSA PETTERS, JASON STRAUSS,
NOAH TEPPERBERG, FORTE NETWORK
INC., D/B/A FORTE SECURITY, FORTE
SECURITY PERSONNEL "JOHN AND JANE
DOES," CLUB MARQUEE PERSONNEL
"JOHN AND JANE DOES," all of the
identified and non identified persons in their
individual andin their official capacities,

                DEFENDANTS.

INDEX NO.: 10 Civ 2666 (SHS)

           10 Civ 2666 (SHS)
           ECF CASE

COMPLAINT
[JURY TRIAL DEMANDED]

2010 MAR 24  PM 5: 22

---

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 USC §§1983, 1988 and Fourth and Fourteenth Amendments and the laws and Constitution of the State of New York.

2.    The claims arise from the Plaintiff's unlawful arrest on July 15, 2008.

3.    This unlawful arrest occurred at approximately 11:20pm in the vicinity of 289 Tenth Avenue, New York City, New York.

4.    The Plaintiff's detention and incarceration continued until he was released after his arraignment on July 16, 2008.

5.    Subsequently the Plaintiff returned to Court on at least three (3) occasions.

6.    On the last Court date, February 5, 2009, the charge which had been preferred against the Plaintiff in association with his arrest was dismissed.

7.    The Plaintiff's arrest was initially effected by private citizens employed by

Defendant 10th Avenue Hospitality Group LLC and Defendant Forte Network Inc., D/B/A Forte Security, including but not limited to Defendant Melissa Petters.

8.     Defendant 10th Avenue Hospitality Group LLC owns and operates the nightclub "Marquee," located at 289 Tenth Avenue, New York City, New York. ("Marquee," "Club Marquee")

9.     It is believed that the arrest of the Plaintiff was undertaken as part of a nightlife drug enforcement effort undertaken by the Defendants 10th Avenue Hospitality LLC and Forte Network, Inc. D/B/A Forte Security in compliance with the terms of a stipulated settlement entered into between the Defendant 10th Avenue Hospitality LLC and the Defendant City of New York in The City of New York v. 10th Avenue Hospitality LLC et al., Supreme New York County Index No. 401498/08 ("Settlement Agreement").

10.    A copy of the Settlement Agreement referenced above is attached hereto as "Exhibit A."

11.    On or about Friday June 27, 2008, the New York Police Department ("NYPD") effected the closure of Marquee following undercover investigations in which officers and agents of the NYPD made no fewer than seven (7) illegal drug purchases inside Marquee since January of 2008.

12.    The Settlement Agreement, which allowed Marquee to re-open, was executed as of Tuesday, July 1, 2008, fourteen (14) days before the Plaintiff's arrest.

13.    Upon information and belief, the wrongful arrest suffered by the Plaintiff was undertaken pursuant to the Settlement Agreement.

14.    As a direct result of the trauma caused by the Plaintiff's wrongful arrest, subsequent detention and the deprivation of medication at the hands of the New York Police Department, the Plaintiff was admitted to North Shore Hospital for approximately one (1) week of treatment and observation following his release from police custody.

15.    As a direct result of the trauma caused by the Plaintiff's wrongful arrest and poor treatment at the hands of the New York Police Department, the Plaintiff has been prescribed medication for post-traumatic anxiety that continues to date.

16.    This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

17.    The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

## II. JURISDICTION

18.   Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. §§ 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

19.   This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to the plaintiff by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and arising under the law and statutes of the City and State of New York.

20.   The Plaintiff requests that the Court invoke pendent claim and pendent party jurisdiction.  The State law claims derive from the same occurrence and transaction which gives rise to the federal law claims and they have a common nucleus of operative fact with the federally based claims.

21.   The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

22.   Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that this is the District in which the claim arose.

## III. JURY DEMAND

23.   Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## IV. THE PARTIES

24.   The Plaintiff is an American citizen and resident of the City of Port Washington, State of New York, and the County of Nassau.

25.   The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is authorized with, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

26.   Defendant New York City Police Officer Yeoman Castro, Shield # 04705 is a New York City Police Officer and agent and employee of the City of New York. Although his actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the United States

and of the State of New York, they were taken in and during the course of his duties and functions as a New York City Police Officer and as agent and employee of the City of New York and incidental to the otherwise lawful performance of his duties and functions as a New York City Police Officers and agent and employee of the City of New York.

27.     Upon information and belief, Defendants New York City Police Officers "John and Jane Does" are New York City Police Officers and agents and employees of the City of New York.  Although their actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and of the State of New York, they were taken in and during the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City Police Officers and agents and employees of the City of New York.

28.     The Plaintiff will amend this complaint to state the true name of these New York City Police Officers "John and Jane Does" as soon as possible.

29.     Defendant 10th Avenue Hospitality Group LLC is a Limited Liability Corporation organized under and pursuant to the laws of the State of New York, whose principal offices are located at 289 Tenth Avenue, New York, New York 10001.

30.     Upon information and belief, Defendant 10th Avenue Hospitality Group LLC is the corporate owner and operator of Marquee.

31.     Upon information and belief, Defendant Jason Strauss was and is at all times relevant to this action a co-owner of Defendant 10th Avenue Hospitality Group LLC.  He is liable for the torts committed by his employees and agents in the course of their duties under the theory of respondeat superior.

32.     Upon information and belief, Defendant Noah Tepperberg was and is at all times relevant to this action a co-owner of Defendant 10th Avenue Hospitality Group LLC. He is liable for the torts committed by his employees and agents in the course of their duties under the theory of respondeat superior.

33.     Upon information and belief, Defendant Melissa Petters was and is at all times relevant to this action an employee of Defendant 10th Avenue Hospitality Group LLC.

34.     Upon information and belief, Defendant Melissa Petters was and is at all times relevant to this action an employee of Defendant Forte Network Inc., D/B/A Forte Security.

35.     Defendant Forte Network Inc., D/B/A Forte Security, was and is at all times relevant to this action a Corporation organized under and pursuant to the laws of the State of New York whose principal offices are located at 707 Broadhollow Road, Suite 28, Farmingdale, New York, 11735.

36.    Upon information and belief, Defendant Forte Network Inc., D/B/A Forte Security was the security firm retained by Defendant 10th Avenue Hospitality Group LLC to provide security services for Club Marquee.

37.    Defendants Club Marquee Personnel "John and Jane Does" were individuals who were employed by Defendant 10th Avenue Hospitality LLC and who were present at or around the time and place of occurrence of the unlawful acts underlying this litigation, but whose names are currently unknown to and undiscoverable by plaintiff.

38.    The Plaintiff will amend this complaint to state the true name of these Club Marquee Personnel "John and Jane Does" as soon as possible.

39.    Defendants Forte Security Personnel "John and Jane Does" were individuals who were employed by Forte Network, Inc., D/B/A Forte Security and who were present at or around the time and place of occurrence of the unlawful acts underlying this litigation, but whose names are currently unknown to and undiscoverable by plaintiff.

40.    The Plaintiff will amend this complaint to state the true name of these Forte Security Personnel "John and Jane Does" as soon as possible.

## V. FACTS COMMON TO ALL CLAIMS

41.    The Plaintiff is Jonathan Michaels.

42.    This is a litigation which arises out of the Plaintiff's arrest on July 15, 2008 at or about 11:20 P.M. in the vicinity of 289 Tenth Avenue, New York City, New York and the subsequent dismissal of the charges preferred against the Plaintiff on February 5, 2009.

43.    The Plaintiff is a resident of Nassau County, New York.

44.    The Plaintiff is twenty four [24] years of age. The Plaintiff's birth date is March 4, 1985.

45.    The Plaintiff is an American citizen.

46.    The Plaintiff resides at 4 Terrace Court, Port Washington, New York 11050.  The Plaintiff has resided at this address since March of 2010.

47.    At all times relevant to this action, Defendant Melissa Petters was an security/door employee of Defendant 10th Avenue Hospitality LLC.

48.    At all times relevant to this action, Defendant Melissa Petters was an security/door employee of Defendant Forte Network, Inc., D/B/A Forte Security.

49.     At all times relevant to this action, Defendant Melissa Petters was involved in the unlawful arrest, excessive force used, unlawful imprisonment and deprivation of rights suffered by the Plaintiff.

50.     At all times relevant to this action, Defendants Club Marquee Personnel "John and Jane Does" were security/door employees of Defendant 10th Avenue Hospitality LLC and involved in the unlawful arrest, excessive force used, unlawful imprisonment and deprivation of rights suffered by the Plaintiff.

51.     At all times relevant to this action, Defendants Forte Security Personnel "John and Jane Does" were security/door employees of Defendant Forte Network, Inc., D/B/A Forte Security and involved in the unlawful arrest, excessive force used, unlawful imprisonment and deprivation of rights suffered by the Plaintiff.

52.     At all times relevant to this action, Defendants Yeoman Castro, Shield # 04705 and New York City Police Officers "John and Jane Does" were police officers employed by the New York Police Department ("NYPD") and involved in the unlawful arrest, excessive force used, unlawful imprisonment and deprivation of rights suffered by the Plaintiff.

53.     Defendants New York City Police Officers "John and Jane Does" were New York City Police Officers present at or around the time and place of occurrence of the unlawful acts underlying this litigation, but whose names are currently unknown to and undiscoverable by plaintiff. The plaintiff will amend this complaint to state the true name of these "John and Jane Does" as soon as possible.

54.     Upon information and belief these unidentified defendants were also responsible for the assault, unlawful arrest, excessive force, false imprisonment, physical and emotional injuries suffered by the Plaintiff.

55.     Upon information and belief, at all times relevant, all individual Defendants were operating and acting in their official capacity as agents or otherwise on behalf of Defendant City of New York.

## THE SETTLEMENT AGREEMENT

56.     It is believed that the arrest of the Plaintiff was undertaken as part of a nightlife drug enforcement effort undertaken in compliance with the terms of the Settlement Agreement referenced above.

57.     Under the terms of this Settlement Agreement, Defendant 10th Avenue Hospitality LLC consented to "implement reasonable recommendations by the NYPD regarding their operations" at Marquee.

58.     Under the terms of this Settlement Agreement, Defendant 10th Avenue LLC was required to randomly subject all patrons to a "thorough search for illegal drugs, weapons

and other contraband by security personnel…" in order to reopen and as a condition for remaining open for business.

59.     Under the terms of this Settlement Agreement, Defendant 10th Avenue LLC was required to "act as a complainant in any subsequent criminal action against the perpetrator(s) arrested at the subject premises [Club Marquee]…." in order to reopen and as a condition for remaining open for business.

60.     Under the terms of this Settlement Agreement, Defendant 10th Avenue LLC was required to "provide monthly reports to the [City of New York]… regarding all investigations and/or operations conducted inside the subject premises [Club Marquee]…." in order to reopen and as a condition for remaining open for business.

61.     Under the terms of this Settlement Agreement, Defendant 10th Avenue LLC was required to employ a security company approved by the City of New York, to wit, Defendant Forte Network Inc. D/B/A Forte Security, in order to reopen and as a condition for remaining open for business.

62.     Under the terms of this Settlement Agreement, Defendant 10th Avenue LLC was required to maintain a list of patrons banned from Club Marquee and supply said list to the NYPD upon two (2) days written notice in order to reopen and as a condition for remaining open for business.

63.     Under the terms of this Settlement Agreement, Defendant 10th Avenue LLC was required to provide the NYPD with surveillance footage from in and around Club Marquee upon "reasonable notice…." in order to reopen and as a condition for remaining open for business.

64.     Under the terms of this Settlement Agreement, Defendant 10th Avenue Hospitality LLC acted on behalf of the NYPD with respect to the policing of Club Marquee.

65.     Under the terms of this Settlement Agreement, Defendant Melissa Petters, Defendants Club Marquee Personnel "John and Jane Does" and Defendants Forte Security Personnel "John and Jane Does" were all operating and acting in their official capacities on behalf of Defendant City of New York.

66.     Upon information and belief, that at all times hereinafter mentioned, Defendant City of New York, its agents, servants and employees, including the NYPD, operated, maintained, controlled and trained the Defendants New York City Police Officer Yeoman Castro, Shield #04705 and the Defendants New York City Police Officers "John and Jane Does."

67.     Upon information and belief, that at all times hereinafter mentioned, Defendant City of New York, its agents, servants and employees, including the NYPD, encouraged the tortious and rights-violative conduct of the Defendants 10th Avenue Hospitality LLC, Melissa Petters, Forte Network Inc. D/B/A Forte Security, Forte Security Personnel "John

and Jane Does" and Club Marquee Personnel "John and Jane Does" by delegating the public function of narcotics enforcement to said Defendants in the Settlement Agreement.

68.     As such, each defendant was, at all times relevant, the agent, employee, delegate or representative of Defendant City of New York.

69.     Each defendant, in doing the acts, or omitting to act, as alleged in this Complaint was acting within the scope of his or her actual or apparent authority, or the alleged acts and omissions of each defendant, as agent, subsequently were ratified and adopted by Defendant City of New York as principal.

70.     During all times relevant in this Complaint, the Defendants were acting under color of law, that is, under color of the constitution, statutes, laws, charter, ordinances, rules, regulation, customs and usage's of New York City and the State of New York.

### THE PLAINTIFF'S DETENTION AND ARREST

71.     Immediately prior to the incident giving rise to this complaint ("the incident"), the Plaintiff, along with several friends, was waiting in line for entrance to Marquee.

72.     One of the Plaintiff's friends had a reservation booked with Marquee for a group including the Plaintiff on the night of the incident.

73.     As such, the Plaintiff was lawfully present at Marquee as a business invitee of Club Marquee at the time of the incident.

74.     The Plaintiff's friends were allowed to enter Marquee without interference.

75.     The Plaintiff was stopped immediately inside the entrance to Marquee by Defendant Melissa Petters.

76.     Defendant Melissa Petters requested that the Plaintiff hold his hands out with his palms facing upward.

77.     The Plaintiff complied.

78.     Defendant Melissa Petters then proceeded to insert her hands into the Plaintiff's pants pockets.

79.     Defendant Melissa Petters inserted her hands into the Plaintiff's pants pockets without his consent.

80.     Defendant Melissa Petters attempted to remove all of the contents from the Plaintiff's pants pockets.

81.   Among the contents of Plaintiff's pants pockets were three (3) pills of Klonopin, a branded form of clonazepam, a prescription anti-anxiety medication.

82.   These three (3) pills of Klonopin fell on the floor as Defendant Melissa Petters removed the rest of the contents of the Plaintiff's pockets.

83.   The Plaintiff has a diagnosed anxiety disorder.

84.   The Plaintiff had and has a valid prescription for Klonopin to treat his panic attacks and social anxiety disorder.

85.   The Plaintiff identified these pills as Klonopin.

86.   A chemical test that was conducted later by the NYPD on the Plaintiff's three (3) pills confirmed that the three pills were in fact Klonopin/clonazepam, a legal prescription medication for which the Plaintiff had and has a valid prescription.

87.   A cursory inspection of the three (3) pills would have revealed that each possessed a pharmacy code imprint.

88.   This pharmacy code imprint allows tracing of the provenance and content of pills with said markings via a basic search that is even available to the public on internet sites such as the Drugs.com pill identification website, available online at http://www.drugs.com/pill_identification.html.

89.   A photograph of two of the Plaintiff's currently-prescribed clonazepam pills, showing the pharmacy code imprints "2351 V" on the front and back of the Plaintiff's clonazepam pills, is attached hereto as Exhibit "B."

90.   Defendant Melissa Petters picked up the Plaintiff's medication from the floor.

91.   Defendant Melissa Petters pointed to a glassine envelope containing white powder on the floor by her feet.

92.   Defendant Melissa Petters instructed the Plaintiff to pick up said glassine envelope.

93.   The Plaintiff complied.

94.   Upon information and belief, the Plaintiff's drivers license was removed from his wallet by Defendant Club Marquee Personnel "John Doe."

95.   Upon information and belief, the Plaintiff's drivers license was removed from his wallet by Defendant Forte Security Personnel "John Doe."

96.   Upon information and belief, the Plaintiff's drivers license was removed from his wallet by Defendant Melissa Petters.

97.   Defendant Melissa Petters then seized the Plaintiff by the right arm and took him outside the front door of Marquee to a small gated area.

98.   Four of the Defendants Club Marquee Personnel and/or Forte Security Personnel "John Does" were present in this small gated area outside of Club Marquee.

99.   After a short period of time, a Defendant Club Marquee Personnel and/or Forte Security Personnel "John Doe" returned the Plaintiff's driver's license.

100.   That Defendant Club Marquee Personnel and/or Forte Security Personnel "John Doe" instructed the Plaintiff not to move.

101.   Approximately fifteen (15) minutes elapsed while the Plaintiff was held, without his property, in the small gated area immediately outside of Club Marquee.

102.   Over that time, the four Defendants Club Marquee Personnel and/or Forte Security Personnel "John Does" surrounding the Plaintiff made intermittent utterances to the effect of "Don't Run," "Don't Try It," "Don't Make Me Chase You," and "You Know What You Did."

103.   The Plaintiff's pre-existing diagnosed anxiety disorder was activated and/or exacerbated by these four intimidating individual Defendants' utterances.

104.   After about fifteen (15) minutes had elapsed, Defendant Police Officer Yeoman Castro and two Defendant Police Officer "John Does" arrived.

105.   The Defendant Police Officers did not conduct an independent investigation of the circumstances leading to the Plaintiff's detention.

106.   One of the Defendant Police Officers instructed the Plaintiff to turn around.

107.   The Plaintiff complied.

108.   One of the Defendant Police Officers handcuffed the Plaintiff.

109.   The Defendant Police Officers and several of the Defendant Club Marquee Personnel and/or Forte Security Personnel then conversed.

110.   The Defendant Police Officers then placed the Plaintiff in a Police van.

111.   While the Plaintiff was in the Police van, the Defendant Police Officers repeatedly asked the Plaintiff, "Where Did You Get The Ecstasy?" "Where Did You Get The Ecstasy?"

112.   The Plaintiff told the Defendant Police Officers that the pills that had been found on his person were Klonopin, prescribed for a diagnosed anxiety issue.

113.   One or more of the Defendant Police Officers stated, "You Don't Have Anxiety, Soldiers In Iraq Have Anxiety."

114.   The Plaintiff's pre-existing diagnosed anxiety disorder was activated and/or exacerbated by these three intimidating Defendant Police Officers' utterances.

115.   At no point was the Plaintiff questioned regarding the glassine envelope of white powder that he had been instructed to pick up by Defendant Melissa Petters.

116.   At no point was the Plaintiff given the opportunity to show that the three (3) pills that had been seized from him were in fact prescription medication for which he possessed a valid prescription.

117.   The Plaintiff offered to have a copy of his prescription brought for the Defendant Police Officers' inspection.

118.   The Plaintiff was then taken to a Police Station where he was detained in custody and processed.

119.   The Plaintiff was photographed and frisk searched.

120.   The Plaintiff was at this first Precinct for several hours before he was transferred to a second Precinct.

121.   The Plaintiff was at the second Precinct for several hours before he was transported to Manhattan Central Booking where he was detained in custody until July 16, 2008, at which time he was arraigned and released.

122.   The Plaintiff was fingerprinted as a result of his arrest.

123.   The Plaintiff was charged with a single count of criminal possession of a controlled substance in the seventh degree, a misdemeanor.

124.   The criminal complaint against the Plaintiff was sworn to by Defendant Police Officer Yeoman Castro, shield no. 04705, based on information supplied by Defendant Melissa Petters.

125.   Defendant Melissa Petters is identified in the criminal complaint against the Plaintiff as "a searcher at Club Marquee."

126.   In the criminal complaint, Defendant Melissa Petters claims that the three pills that she seized from the Plaintiff were Methylenedioxymethamphetamine, also known as MDMA, also known as the drug ecstasy.

127.   In the criminal complaint, Defendant Melissa Petters claimed that the Plaintiff identified the three (3) pills in his possession as ecstasy.

128.   In the criminal complaint, Defendant Melissa Petters claimed that the glassine envelope of white powder that she instructed the Plaintiff to pick up had been in the Plaintiff's pocket, and that the Plaintiff identified it as cocaine.

129.   In the criminal complaint, Defendant Melissa Petters claimed that the Plaintiff stated "I was doing coke to fit in."

130.   A chemical test that was conducted later by the NYPD on the glassine envelope of white powder, that Defendant Melissa Petters instructed the Plaintiff to pick up, did in fact contain cocaine.

131.   The Plaintiff was not charged with possession of cocaine, despite the statements of Defendant Melissa Petters.

132.   Upon information and belief, the Defendant Police Officer(s) "John and/or Jane Doe(s)" and/or the agent(s) of the District Attorney's Office of the City and County of New York that was/were responsible for the filing of the criminal complaint against the Plaintiff did not find Defendant Melissa Petters statements as to the cocaine credible.

133.   The Plaintiff did not engage in any possession of a controlled substance without a proper prescription or any other unlawful act, except at the order of Defendant Melissa Petters.

## POST-ARREST

134.   While the Plaintiff was in police custody, he requested his prescribed medication for his diagnosed anxiety disorder.

135.   While the Plaintiff was in police custody, he requested his prescribed medication for his diagnosed Crohn's disease, an inflammatory intestinal disorder.

136.   The Plaintiff was informed by one Defendant New York Police Officer "John or Jane Doe" that in order to receive his medication, he would need to be handcuffed to a stretcher and transferred to Bellevue, but if he opted to do so he would not be arraigned for four (4) days.

137.   This information was false.

138.    Given the false choice between an incarceration that would come to an end in the next 12 hours, and spending an additional 36 hours or more incarcerated with the medication he needed to remain healthy, the Plaintiff opted for the shorter incarceration.

139.    As a direct result of the false choice presented to the Plaintiff by Defendant New York Police Officer "John or Jane Doe," three days subsequent to his release from incarceration the Plaintiff suffered harm and damage, to wit, a Crohn's Disease attack.

140.    Crohn's Disease attacks can be triggered by stress.

141.    Crohn's Disease attacks can be triggered by failure to adhere to a prescribed regimen of medication for Crohn's Disease.

142.    The Plaintiff was hospitalized at North Shore University Hospital for approximately one (1) week as a result of his arrest.

143.    The Plaintiff's mental condition worsened as a result of his arrest.

144.    The Plaintiff's prescribed dose of the prescription antidepressant drug Zoloft was increased as a result of his arrest, first from 150 to 200 milligrams, then to 250 milligrams.

145.    The Plaintiff was additionally prescribed the antidepressant/antipsychotic drug Abilify as a result of paranoia stemming from his arrest.

146.    The Plaintiff increased the frequency of his visits to his psychiatrist from once a week to twice a week as a result of his arrest.

147.    Subsequent to the arrest, the Plaintiff was detained and imprisoned in custody until his arraignment on July 16, 2008, in the Criminal Court of the City of New York, County of New York [Manhattan] when and where he was released without bail.

148.    On August 20, 2008, the Plaintiff was required to return to Court.

149.    On October 24, 2008, the Plaintiff was required to return to Court.

150.    On February 5, 2009, the Plaintiff was required to return to Court when and where the charges, which had been preferred against him, were dismissed.

151.    While the actions and conduct of the employees of Defendants 10th Avenue Hospitality Group LLC, Forte Network, Inc. D/B/A Forte Security and the Defendant New York City Police Officers were unlawful, they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as *de facto* New York City Police Officers and as agents of the City of New York.

152.   The Plaintiff was arrested and taken into custody although the Plaintiff had not done anything which any reasonable person, including law enforcement agents, could have reasonably and objectively believed to have been criminal in nature or otherwise unlawful in nature.

153.   The Plaintiff committed no criminal offense or other offense whatsoever and no reasonable police officer could have believed that the Plaintiff committed any criminal offense or any other offense under and of the law to justify his stop, detention, and custodial arrest or the subsequent search to which he was subjected in association with his arrest and detention and imprisonment.

154.   There was no basis for the stop and detention and eventual custodial arrest of the Plaintiff by the employees of Defendants 10th Avenue Hospitality Group LLC, Forte Network, Inc. D/B/A Forte Security and the Defendant New York City Police Officers, each of whom was acting an agent and/or employee of the City of New York with respect to the incident forming the basis of the instant action.

155.   There was no probable cause for the arrest of the Plaintiff and all associated therewith including the Plaintiff's handcuffing, his frisk search, and his fingerprinting.

156.   The Plaintiff was unreasonably stopped and detained and thereafter falsely arrested and imprisoned and was subjected to excessive, unreasonable and unnecessary force in the form of his handcuffing and was otherwise subjected to an unnecessary and excessive and unreasonable search and fingerprinting.

157.   The Plaintiff's was unlawfully stopped, detained, assaulted and falsely arrested and subjected to excessive and unnecessary force and subjected to an unnecessary, unreasonable and excessive search, to an unnecessary and unreasonable and excessive detention, to an unnecessary, unreasonable, and excessive fingerprinting, to malicious prosecution, and to malicious abuse of criminal process for no legitimate purpose.

158.   The actions, conduct, policies and practices and customs herein described, including but not limited to the Settlement Agreement, violated the Plaintiff's rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

159.   The actions, conduct, policies and practices, and customs herein described, including but not limited to the Settlement Agreement, violated the Plaintiff's rights under the laws and Constitution of the State of New York including the stop and detention of the Plaintiff, the false arrest and imprisonment of the Plaintiff, the assault and battery of the Plaintiff and the search of the Plaintiff, the fingerprinting of the Plaintiff, the excessive detention of the Plaintiff, the malicious prosecution of the claim and the malicious abuse of criminal process employed against the Plaintiff.

160.   The actions, conduct, policies and practices and customs herein described, including but not limited to the Settlement Agreement, were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

161.   The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, embarrassment, humiliation, and psychological trauma and physical pain and suffering.

162.   The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

163.   The Plaintiff has no other adequate remedy at law for the violation of his rights but through the commencement of this litigation.

164.   All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

165.   All of the aforementioned acts deprived the Plaintiff of its' rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

166.   The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and police agents, with all of the actual and/or apparent authority attendant thereto.

167.   The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and police agents, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the NYPD, all under the supervision or at the behest of ranking officers of said department.

## VI.  CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### (42 USC § 1983)[*]

168.   The above paragraphs are here incorporated by reference.

169.   On July 15, 2008 at or about 11:20 P.M. in the vicinity of 289 Tenth Avenue, New York City, New York, the Plaintiff was subjected to an illegal search conducted by Defendant Melissa Petters on behalf of Defendants 10th Avenue Hospitality Group LLC in compliance with the Settlement Agreement entered into by and between Defendants 10th

---

[*]   This sub-heading and the similar sub-headings that follow below the subsequent causes of action are intended for reference only, and are not meant to substantively define, contribute to or otherwise modify the claims pleaded herein.

Avenue Hospitality Group LLC and The City of New York just over two weeks prior to this incident.

170.    In conducting this illegal search of the Plaintiff on behalf of Defendants 10th Avenue Hospitality Group LLC in compliance with the Settlement Agreement, Defendant Melissa Petters and her employer(s) were willful participants in joint activity with the Defendant City of New York.

171.    On July 15, 2008 at or about 11:20 P.M. in the vicinity of 289 Tenth Avenue, New York City, New York, the Plaintiff was subjected to an illegal search conducted by Defendant Melissa Petters on behalf of Defendants Forte Network, Inc., D/B/A Forte Security in compliance with the Settlement Agreement.

172.    In conducting this illegal search of the Plaintiff on behalf of Defendants Forte Network, Inc., D/B/A Forte Security in compliance with the Settlement Agreement, Defendant Melissa Petters and her employer(s) were willful participants in joint activity with the Defendant City of New York.

173.    Subsequent to this illegal search, Plaintiff was unlawfully detained by agents of Defendants 10th Avenue Hospitality Group LLC and Forte Network, Inc., D/B/A Forte Security in compliance with the Settlement Agreement.

174.    Thereafter, the Plaintiff was falsely accused of possessing illegal substances and was turned over to New York City Police Officers including but not limited to Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does."

175.    Upon information and belief, Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" arrested the Plaintiff solely based on Defendant Melissa Petters' request, without making any independent investigation of the allegations against the Plaintiff.

176.    Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" did not inspect the pills in Plaintiff's possession.

177.    Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" did not seek to identify the pills in Plaintiff's possession.

178.    Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" did not investigate the Plaintiff's claim that the pills in Plaintiff's possession had been obtained and were possessed pursuant to a valid prescription.

179.    Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" did not conduct an appropriate and/or objective interview of the Plaintiff.

180.    Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" did not interview members of the Plaintiff's party.

181.   In sum, Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" merely accepted Defendant Melissa Petters' allegations against the Plaintiff and arrested the Plaintiff without any meaningful determination of probable cause.

182.   In doing so, Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" allowed Defendant Melissa Petters' judgment about whether probable cause existed to be substituted for their own.

183.   Following his arrest, the Plaintiff was charged with possession of an illegal substance.

184.   Upon information and belief, the above-described criminal charges were a pretext intended to justify the Plaintiff's illegal arrest.

185.   That the actions of Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" heretofore described constitute unlawful detention, imprisonment, assault and battery and malicious prosecution and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York.

186.   That the conduct and actions of Defendants Melissa Petters, 10th Avenue Hospitality Group LLC, Forte Network Inc. D/B/A Forte Security, Club Marquee Personnel "John and Jane Does" and Forte Security Personnel "John and Jane Does," Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does," acting under color of State law, in assaulting, detaining and imprisoning and maliciously prosecuting the Plaintiff, were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause pain and suffering in violation of the Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York.

187.   Defendants Melissa Petters, 10th Avenue Hospitality Group LLC, Forte Network Inc. D/B/A Forte Security, Club Marquee Personnel "John and Jane Does" and Forte Security Personnel "John and Jane Does," Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does," and The City of New York deprived the Plaintiff of his liberty in violation of his civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York.

188.   Defendants Melissa Petters, 10th Avenue Hospitality Group LLC, Forte Network Inc. D/B/A Forte Security, Club Marquee Personnel "John and Jane Does" and Forte

Security Personnel "John and Jane Does," Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does'" actions were undertaken under color of law and would not have existed but for said defendants using the official powers vested in them by Defendant City of New York.

189.    As a result of the above constitutionally impermissible conduct, the Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to their reputations and standing within their community.

190.    All of the Defendants acted under color of law to deprive plaintiff of his civil, constitutional and statutory rights to due process of law pursuant to the Fourteenth and Fourth Amendments to the United States Constitution and are liable to plaintiff under 42 U.S.C. §1983 and §§ 6 and 12 of the New York State Constitution.

191.    As a result of the foregoing, the Plaintiff demands judgment against the Defendants in a sum of money to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### (42 USC § 1983 False Imprisonment- As To All Defendants)

192.    The above paragraphs are here incorporated by reference.

193.    The Plaintiff was unlawfully stopped, searched and detained and subsequently falsely arrested, falsely imprisoned and excessively detained in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

194.    In commencing said wrongful detainment and imprisonment, the Defendants 10th Avenue Hospitality LLC, Forte Networks, Inc. D/B/A Forte Security, Melissa Petters, 10th Avenue Hospitality Group LLC Personnel "John and Jane Does" and Forte Security Personnel "John and Jane Does" ("The Club Marquee Defendants") caused the Plaintiff to be wrongfully detained in violation of the Penal Laws of the State of New York and his constitutional rights.

195.    In commencing said wrongful detainment and imprisonment, The Club Marquee Defendants were acting as willful participants in joint activity with Defendant City of New York, pursuant to the terms of the Settlement Agreement discussed above.

196.    In continuing said wrongful detainment and imprisonment, the Defendants Police Officer Yeoman Castro and Police Officers "John and Jane Does" ("The Police Defendants") and Defendant City of New York caused the Plaintiff to be wrongfully detained in violation of the Penal Laws of the State of New York and his constitutional rights.

197.    At the time of Plaintiff's unlawful arrest, the Police Defendants knew or should

have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest was false and without probable cause.

198.   However, due to the Settlement Agreement, no investigation of Defendant Melissa Petters' allegations against the plaintiff was conducted; the Police Defendants merely substituted The Club Marquee Defendants' judgment as to whether probable cause existed for their own and took the Plaintiff into custody.

199.   The aforesaid arrest was malicious, unlawful and not based upon a warrant, probable cause, and/or any other justification, and was therefore a false arrest.

200.   As a result of the foregoing, the Plaintiff was caused to suffer personal injuries, violations of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damages to his reputations and standing within his communities.

201.   As a result of the foregoing, the Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (False Imprisonment- As To The Club Marquee Defendants)

202.      The above paragraphs are here incorporated by reference.

203.   The Plaintiff's valuable property, to wit, his Driver's License, was removed from his wallet by Defendant Club Marquee Personnel "John Doe."

204.   The Plaintiff's valuable property, to wit, his Driver's License, was removed from his wallet by Defendant Forte Security Personnel "John Doe."

205.   The Plaintiff's valuable property, to wit, his Driver's License, was removed from his wallet by Defendant Melissa Petters.

206.   The Plaintiff was then seized by Defendant Melissa Petters and led to a small gated area outside of Marquee.

207.   Four of the Defendants Club Marquee Personnel and/or Forte Security Personnel "John Does" were present in this small gated area outside of Marquee.

208.   The Plaintiff's driver's license was returned by a Defendant Club Marquee Personnel and/or Defendant Forte Security Personnel "John Doe" who instructed the Plaintiff not to move.

209.   Approximately fifteen (15) minutes elapsed while the Plaintiff was held, without his property, in the small gated area immediately outside of Club Marquee.

210.   Over that time, the four Defendants Club Marquee Personnel and/or Forte Security Personnel "John Does" surrounding the Plaintiff made intermittent utterances to the effect of "Don't Run," "Don't Try It," "Don't Make Me Chase You," and "You Know What You Did.

211.   No reasonable person in any of the above-described circumstances would have believed that they were free to leave.

212.   Defendants 10th Avenue Hospitality LLC, Forte Networks, Inc. D/B/A Forte Security, Melissa Petters, 10th Avenue Hospitality Group LLC Personnel "John and Jane Does" and Forte Security Personnel "John and Jane Does" did not have legal authority to imprison the Plaintiff in the manner described above.

213.   Defendants 10th Avenue Hospitality LLC, Forte Networks, Inc. D/B/A Forte Security, Melissa Petters, 10th Avenue Hospitality Group LLC Personnel "John and Jane Does" and Forte Security Personnel "John and Jane Does" did not have a cognizable legal privilege sufficient to justify imprisoning the Plaintiff in the manner described above.

214.   As a result of the foregoing, the Plaintiff was caused to suffer personal injuries, violations of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damages to his reputations and standing within his communities.

215.   As a result of the foregoing, the Plaintiff demands judgment against Defendants 10th Avenue Hospitality LLC, Forte Networks, Inc. D/B/A Forte Security, Melissa Petters, 10th Avenue Hospitality Group LLC Personnel "John and Jane Does" and Forte Security Personnel "John and Jane Does" in a sum of money to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (42 USC § 1983 Malicious Prosecution- As To All Defendants)

216.   The above paragraphs are here incorporated by reference.

217.   Subsequent to Plaintiff's arrest, Defendant, City of New York, through its agents, servants and/or employees, including, but not limited to the Club Marquee Defendants and the Police Defendants did maliciously cause criminal prosecutions to be commenced against Plaintiff, in the Criminal Court of the City of New York, County of New York, by filing accusatory instruments, without probable cause and in bad faith.

218.   Subsequent to the Plaintiff's arrest, Defendants Melissa Petters gave false sworn statements in connection with Plaintiff's criminal prosecution.

219.   Subsequent to the Plaintiff's arrest, Police Officer Yeoman Castro gave false sworn statements in connection with Plaintiff's criminal prosecution.

220.   In commencing and continuing said malicious prosecution, Defendant City of New

York, its agents, servants and/or employees caused the Plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

221.   In commencing and continuing said malicious prosecution, Defendants including but not limited to the Police Defendants caused the Plaintiff to be falsely charged with crimes in violation of the Penal Laws of the State of New York.

222.   The Plaintiff had not committed or attempted to commit any illegal act(s).

223.   The Plaintiff had not given Defendant City of New York, its agents, servants and/or employees probable cause to believe that he had committed the illegal acts of which they were accused.

224.   The Plaintiff had not given the Club Marquee Defendants or the Police Defendants probable cause to believe that he had committed the illegal acts of which he was accused.

225.   Defendant CITY OF NEW YORK, through its agents, servants and/or employees, knew or should have known, through the exercise of proper police procedure and/or reasonable due care that said investigation was false, flawed and incomplete.

226.   The Police Defendants should have known, through the exercise of proper police procedure and/or reasonable due care that said investigation was flawed and incomplete.

227.   However, Defendant City of New York and The Police Defendants did not conduct an independent investigation and instead allowed the Club Marquee Defendants' judgment about whether probable cause existed to arrest the Plaintiff to be substituted for their own.

228.   Defendant CITY OF NEW YORK, its agents, servants and/or employees, willfully and wrongfully accused the Plaintiff of having violated the Penal Laws of the State of New York.

229.   Defendants Melissa Petters and Police Officer Yeoman Castro willfully and wrongfully accused the Plaintiff of having committed crimes in false sworn statements and in violation of the Penal Laws of the State of New York.

230.   The criminal charge preferred against the Plaintiff in relation to the incident has been dismissed.

231.   As a result of the malicious prosecution undertaken by Defendants, the Plaintiff suffered and continues to suffer substantial damages.

232.   As a result of the foregoing, the Plaintiff was caused to suffer personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

233.   As a result of the foregoing, the Plaintiff demands judgment against the Defendants in a sum of money to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Supervisory Liability- As To Defendants Jason Strauss, Noah Tepperberg, 10th Avenue Hospitality LLC And Forte Network, Inc., D/B/A Forte Security)

234.   The above paragraphs are here incorporated by reference.

235.   Defendants Jason Strauss, Noah Tepperberg, 10th Avenue Hospitality LLC and Forte Network, Inc., D/B/A Forte Security ("The Club Marquee Management Defendants") are liable for the damages suffered by Plaintiff as a result of the conduct of their employees and contractors.

236.   The Club Marquee Management Defendants knew or should have known of the abuses of discretion and authority afforded to 10th Avenue Hospitality Group LLC and its employees and contractors under the terms of the Settlement Agreement.

237.   The Club Marquee Management Defendants knew or should have known that the personnel who caused plaintiff injury had a propensity for the type of conduct that took place in this case.   Nevertheless, The Club Marquee Management Defendants failed to take corrective action.

238.   The Club Marquee Management Defendants have failed to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct.

239.   Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of The Club Marquee Management Defendants.

240.   The Club Marquee Management Defendants have damaged plaintiff by their failure to properly train, supervise, discipline, review, remove, or correct the illegal and improper acts of their employees, agents or servants in this and in similar cases.

241.   Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of The Club Marquee Management Defendants.

242.   As a result of the foregoing, the Plaintiff demands judgment against Defendants Jason Strauss, Noah Tepperberg, 10th Avenue Hospitality LLC and Forte Network, Inc., D/B/A Forte Security in a sum of money to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Municipal Liability- Monell)

243.   The above paragraphs are here incorporated by reference.

244.   Defendants the City of New York, Jason Strauss, Noah Tepperberg, 10th Avenue Hospitality LLC and Forte Network, Inc., D/B/A Forte Security ("Institutional Defendants") are liable for the damages suffered by Plaintiff as a result of the conduct of their employees and contractors.

245.   The Institutional Defendants knew or should have known of the abuse of the discretion and authority afforded to 10th Avenue Hospitality LLC and its employees and contractors under the terms of the Settlement Agreement referenced above.

246.   The Institutional Defendants have failed to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct.

247.   The policymakers of Defendant City of New York knew or should have known that delegating narcotics enforcement authority and responsibility to The Club Marquee Management Defendants through the Settlement Agreement was not an appropriate or correct response to the problem of recurring illegal drug sales taking place within Marquee.

248.   By entering into the Settlement Agreement less than a week after shutting down Marquee for illegal drug sales on Marquee's premises, the policymakers of Defendant City of New York delegated narcotics enforcement authority to the very parties whose failure to correctly police their premises engendered the public safety issue that the closure of Marquee was presumably meant to address.

249.   The above described Settlement Agreement constitutes a written policy of The City and Defendant state actors Jason Strauss, Noah Tepperberg, 10th Avenue Hospitality LLC and Forte Network, Inc., D/B/A Forte Security with respect to the policing of Marquee and was the cause of the violations of plaintiff's rights here alleged.

250.   Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the Institutional Defendants.

251.   Plaintiff has been damaged as a result of the wrongful, negligent and illegal cession of law enforcement authority by Defendant City of New York to Defendant 10th Avenue Hospitality LLC and its employees and contractors.

252.   The above described policies and customs under the Settlement Agreement demonstrate a deliberate indifference on the part of policymakers of Defendant New York City to the constitutional rights of persons within New York City, and caused the violations of Plaintiff's constitutional rights.

253.   The Institutional Defendants have damaged Plaintiff by their failure to properly train, supervise, discipline, review, remove, or correct the illegal and improper acts of their employees, agents or servants in this and in similar cases.

254.   Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the Institutional Defendants.

255.   As a result of the foregoing, the Plaintiff demands judgment against Defendants City of New York, Jason Strauss, Noah Tepperberg, 10th Avenue Hospitality LLC and Forte Network, Inc., D/B/A Forte Security in a sum of money to be determined at trial.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
### (Negligent Hiring, Training & Retention – As To The City Of New York)

256.   The above paragraphs are here incorporated by reference.

257.   Defendant Police Officers Yeoman Castro and "John and Jane Does" ("Defendant Police Officers") had   negligent dispositions and Defendant City of New York knew or should have known of facts that would have led reasonable and prudent people to further investigate the Defendant Police Officers' negligent dispositions through the hiring process.

258.   Defendant City of New York knew or should have known that their failure to investigate Defendant Police Officers' negligent dispositions would lead to the Plaintiff's injury.

259.   Defendant City of New York was negligent in their hiring and retaining the Defendant Police Officers involved in this case in that they knew or should have known of the officers' propensity to act negligently.

260.   Defendant Police Officers Yeoman Castro and "John and Jane Does" had negligent propensities and Defendant City of New York knew or should have known of facts that would have led reasonable and prudent people to further investigate the Defendant Police Officers' negligent propensities through the hiring process.

261.   Defendant City of New York knew or should have known that their failure to investigate Defendant Police Officers' negligent propensities would lead to the Plaintiff's injury.

262.   Defendant City of New York knew or should have known that their failure to train Defendant Police Officers to conduct meaningful independent investigations of civilians' allegations would lead to the Plaintiff's injury.

263.   Defendant City of New York was negligent in their hiring, training and retaining the Defendant Police Officers involved in this case in that they knew or should have known of the officers' propensity to act negligently.

264.   Defendant City of New York was negligent in their hiring, training and retaining the Defendant Police Officers involved in this case in that they knew or should have

known of the officers' propensity to delegate their authority to civilians and fail to conduct meaningful independent investigations of civilian's allegations before effecting arrests.

265.   Defendants City and the Defendant Police Officers have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiffs under common law, 42 USC §1983 and the New York State Constitution.

266.   As a result of the foregoing, the Plaintiff demands judgment against Defendant City of New York in a sum of money to be determined at trial.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (Deliberate Indifference To Serious Medical Needs)

267.   The above paragraphs are here incorporated by reference.

268.   The Defendant City of New York and Defendant Police Officers "John and Jane Does" have acted under color of law to deprive plaintiff of his civil, constitutional and statutory rights to due process of law pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and are liable to plaintiff under 42 USC §1983 and the New York State Constitution.

269.   The Defendant City of New York and Defendant Police Officers "John and Jane Does" knew or should have known that the Plaintiff faced a substantial risk of permanent disability, and disregarded that risk by constructively denying needed medication to the Plaintiff by threatening the Plaintiff with extended pre-arraignment incarceration as a condition of the Plaintiff receiving needed medication.

270.   The Defendant City of New York and Defendant Police Officers "John and Jane Does'" deliberate indifference caused the Plaintiff to sustain serious and permanent injury, to wit, exacerbation of the Plaintiff's Crohn's disease requiring approximately one (1) week of hospitalization.

271.   The Defendant City of New York and Defendant Police Officers "John and Jane Does'" deliberate indifference caused the Plaintiff to sustain serious and permanent injury, to wit, exacerbation of the Plaintiff's mental disorder requiring increased dosages of Zoloft and additional prescription of Abilify, as well as additional psychiatric care.

272.   The Institutional Defendants' constructive denial of needed medication to the Plaintiff by threatening the Plaintiff with extended pre-arraignment incarceration as a condition of the Plaintiff receiving needed medication constituted deliberate disregard towards plaintiff's serious medical needs and the substantial risk of serious harm he faced.

273.   Plaintiff was damaged by the deliberate indifference of the Defendant City of New York and Defendant Police Officers "John and Jane Does'".

274. As a result of the foregoing, the Plaintiff demands judgment against Defendant City of New York and Defendant Police Officers "John and Jane Does"' in a sum of money to be determined at trial.

## AS AND FOR AN NINTH CAUSE OF ACTION
### (Negligence- As To The Police Defendants And The City Of New York)

275. The above paragraphs are here incorporated by reference.

276. The Police Defendants had duties to the Plaintiff to use reasonable care in fulfilling their official duties.

277. The Police Defendants breached that duty throughout the Plaintiff's detention, search, arrest and incarceration.

278. The Police Defendants' failure to use reasonable care in investigating Defendant Melissa Petters' allegations against the Plaintiff actually and proximately caused the Plaintiff to be hospitalized and prescribed additional medication for continuing anxiety issues.

279. The Defendant City of New York's failure to use reasonable care in entering into the above-referenced Settlement Agreement with Defendant 10th Avenue Hospitality LLC less than a week after shutting down Marquee for recurring illegal drug activity actually and proximately caused the Plaintiff to be hospitalized and prescribed additional medication for continuing anxiety issues.

280. Plaintiff was seriously injured as a result of the Police Defendants' negligence.

281. As a result of the foregoing, the Plaintiff demands judgment against Defendant City of New York, Defendant Police Officer Yeoman Castro and Defendant Police Officers "John and Jane Does" in a sum of money to be determined at trial.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Negligence- As To The Club Marquee Defendants)

282. The above paragraphs are here incorporated by reference.

283. The Plaintiff was lawfully present at Club Marquee as a business invitee.

284. The Plaintiff was present as a member of a party with a booked reservation at Club Marquee at the time of the incident giving rise to this complaint.

285. The Club Marquee Defendants had duties to the Plaintiff as a business invitee to use reasonable care in fulfilling their official duties, both generally and under the Settlement Agreement.

286. The Club Marquee Defendants had duties to the Plaintiff as a licensee to use reasonable care in fulfilling their official duties.

287. The Club Marquee Defendants breached that duty throughout the Plaintiff's detention, search, arrest and incarceration.

288. The Club Marquee Defendant's failure to use reasonable care in the detention, search, and instigation of criminal charges of and against the Plaintiff actually and proximately caused the Plaintiff to be hospitalized and prescribed additional medication for continuing anxiety issues.

289. As the owners of Defendant 10th Avenue Hospitality Group LLC, Defendants Jason Strauss and Noah Tepperberg are liable for the negligence of their servants and employees under the theory of respondeat superior.

290. Plaintiff was seriously injured as a result of The Club Marquee Defendants' negligence.

291. As a result of the foregoing, the Plaintiff demands judgment against Defendants 10th Avenue Hospitality Group LLC, Forte Network Inc. D/B/A Forte Security, Melissa Petters, Jason Strauss, Noah Tepperberg, Club Marquee Personnel "John and Jane Does" and Forte Security Personnel "John and Jane Does" in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

    I.   Invoke pendent party and pendent claim jurisdiction.

    II.  Award appropriate compensatory and punitive damages.

    III. Award appropriate declaratory and injunctive relief.

    IV. Empanel a jury.

    V.  Award attorney's fees and costs.

    VI. Award such other and further relief as the Court deems to be in the interest of justice.

DATED:     New York, New York
             March 22, 2010

                    Respectfully submitted,

                    WYLIE M. STECKLOW [WS 6012]
                    10 SPRING STREET – SUITE 1
                    New York, New York 10012
                    [212] 566-8000
                    [212] 202-4952/FAX
                    ATTORNEY FOR PLAINTIFF

## VERIFICATION

JONATHAN MICHAELS affirms that he is the Plaintiff in the within action and and as such is familiar with the facts and circumstances of this case and that the following statements are true under the penalties of perjury:

I have read the foregoing Complaint and know the contents thereof, and the same is true to my knowledge except as to the matters therein stated to be alleged upon information and belief and as to those matters I believe it to be true.

Dated: March 22, 2010
      New York, N.Y.

                                                  JONATHAN MICHAELS

Sworn to before me this 22ND
day of MARCH, 2010

Notary Public

**SAMUEL COHEN**
**NOTARY PUBLIC - STATE OF NEW YORK**
**NO. 01CO6108536**
**QUALIFIED IN NEW YORK COUNTY**
**COMMISSION EXPIRES 07/02/2012**