UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JONATHAN MICHAELS,                                                :
                                                                  :
                      Plaintiff,                        :
                                                                  :   10 Civ. 2666 (SHS)
      -against-                                                :
                                                                  :   OPINION & ORDER
THE CITY OF NEW YORK, a municipal entity,                         :
NEW YORK CITY POLICE OFFICER YEOMAN                               :
CASTRO, Shield #04705, NEW YORK CITY                              :
POLICE OFFICERS "JOHN AND JANE DOES,"                             :
10TH AVENUE HOSPITALITY GROUP LLC,                                :
MELISSA PETTERS, JASON STRAUSS, NOAH                              :
TEPPERBERG, FORTE NETWORK INC., D/B/A                             :
FORTE SECURITY, FORTE SECURITY                                    :
PERSONNEL "JOHN AND JANE DOES," CLUB                              :
MARQUEE PERSONNEL "JOHN AND JANE                                  :
DOES," all of the identified and non identified                   :
Persons in their individual and in their official                 :
capacities,                                                       :
                                                                  :
                      Defendants.                       :
------------------------------------------------------------------x
SIDNEY H. STEIN, U.S. District Judge.

       Jonathan Michaels brings this civil rights action pursuant to 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights.  He also asserts various New York state law claims against the City of New York, police officer Yeoman Castro, 10th Avenue Hospitality Group LLC ("10th Avenue" or "Club Marquee"), Melissa Petters, Jason Strauss, Noah Tepperberg, Forte Network Inc. ("FNI"), and unidentified police officers, 10th Avenue employees, and FNI employees.  Plaintiff's claims arise from his arrest at Club Marquee, a New York City nightclub.  All defendants have now moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6).  Because the Court finds that plaintiff has failed to state a federal claim for relief against any defendant, defendants' motions to dismiss the complaint are granted.

1

**BACKGROUND**

The following facts are taken from the amended complaint and are assumed to be true for the purposes of these motions.

  A. <u>Parties</u>

Plaintiff Jonathan Michaels is a citizen of the State of New York.  (Am. Compl. ¶ 23.)

Defendant Yeoman Castro is a New York City police officer employed by the defendant City of New York (Castro and the City of New York, along with the unidentified police officers, collectively, "City Defendants").  (*Id.* ¶¶ 24-26.)

Defendant 10th Avenue is a limited liability corporation which owns and operates Club Marquee.  (*Id.* ¶¶ 28-29.)  Defendants Jason Strauss and Noah Tepperberg are both members of 10th Avenue, and Tepperberg is also its president.  (*Id.* ¶¶ 30-31.)

Forte Network Inc. is a private security company hired by Club Marquee to provide security services at the club.  (*Id.* ¶ 34.)  Melissa Petters is an FNI security guard.  (*Id.* ¶ 33.)

  B. <u>Plaintiff's Detention and Arrest</u>

On the night of July 15, 2008, Michaels, along with a group of friends, sought to enter Club Marquee.  (*Id.* ¶ 70.)  Michaels was stopped at the door by Petters, who requested that Michaels hold his hands out in front of him and, without his consent, proceeded to remove the contents of his pockets.  (*Id.* ¶¶ 75, 78.)  In his pockets she found three loose pills, which fell to the floor.  (*Id.* ¶ 80.)  Although Michaels asserted that the pills were his prescription medication, (*id.* ¶ 82), Petters believed they were the drug known as ecstasy, (*id.* ¶ 121).  A chemical test later determined that the pills were in fact Klonopin—a legal prescription medication that Michaels had been prescribed, (*id.* ¶ 83).

Petters picked up the pills from the ground, (*id.* ¶ 87), and told Michaels to pick up an envelope lying by her feet, (*id.* ¶ 88). Michaels picked up the envelope, which contained cocaine. (*Id.* ¶¶ 90, 125.) The face of the complaint does not allege where the envelope had come from. In any event, Petters took plaintiff's driver's license and with the help of unidentified persons held him outside the club in a gated area while she called the police. (*Id.* ¶¶ 91-98.) About fifteen minutes later, police officer Castro and two other police officers arrived at Club Marquee. (*Id.* ¶¶ 98-104.) Michaels told the officers that the pills were his prescription medication, but the officers rejected his explanation, allegedly without inspecting the pills themselves. (*Id.* ¶¶ 105-111.)

The officers arrested plaintiff and took him first to the police station for processing, (*id.* ¶¶ 113-115), and then to Manhattan Central Booking, where he spent the night, (*id.* at 116). The following morning, he was arraigned on the charge of criminal possession of a controlled substance, and released. (*Id.* ¶ 119.) The criminal complaint includes confessions allegedly made by Michaels to Castro and Petters about his possession of illegal drugs that night. (*Id.* ¶¶ 119-124.) Following his arraignment, Michaels returned to court three times before the charge against him was dismissed approximately seven months later. (*Id.* ¶¶ 138-140.)

While he was in custody on the night of July 15, 2009, plaintiff asked an unidentified officer for his medication, which he uses to treat Crohn's disease, an inflammatory intestinal disorder. (*Id.* ¶ 129.) The officer told Michaels that in order to receive his medication that night he could be taken to the hospital in handcuffs and on a stretcher, but his arraignment would be delayed by four days as a result. (*Id.* ¶¶ 130-31.) Given this choice, Michaels opted not to receive his medication that night. (*Id.* ¶ 132.) Three days after his release, Michaels suffered a Crohn's disease attack, which he attributes to his earlier inability to take his prescription

medication and the stress caused by his detention. (*Id.* ¶¶ 133-135.) Plaintiff was hospitalized at North Shore University Hospital for approximately one week. (*Id.* ¶ 136.)

   C. <u>Settlement Agreement Between the City and Club Marquee</u>

Two weeks before Michaels' arrest at Club Marquee, the club had entered into a settlement agreement with the City to settle a public nuisance action. (*See* Stipulation of Settlement dated July 1, 2008 ("Settlement").) The Settlement permitted Club Marquee—which the City had shut down in late June because of repeated drug arrests on the premises—to re-open on the condition that Club Marquee implement a drug enforcement program. (Am. Compl. ¶¶ 11, 60; *see also* Settlement ¶ 3.) 10th Avenue agreed, *inter alia*, to monitor illegal activity at Club Marquee, employ a private security company such as FNI, randomly search patrons, inform authorities about illegal activity, serve as a complaining witness, and provide monthly reports to the City. (*See* Settlement.) The Settlement further provided that the parties would meet on or before July 18, 2008, to discuss initiating new search procedures and other security concerns. (*Id.* ¶ 6.) According to plaintiff, prior to July 15, 2008—the night Michaels was arrested and two weeks after the Settlement had been signed—the City had given 10th Avenue and FNI no guidance or training as to how to comply with the Settlement. (Pl.'s Mem. of Law in Opp. to Mots. to Dismiss at 2.)

   D. <u>This Action</u>

On March 24, 2010, plaintiff commenced this action. Michaels sues all the defendants in their individual and official capacities. He asserts a number of claims: Pursuant to 42 U.S.C. § 1983, Michaels asserts false arrest, false imprisonment, malicious prosecution, and municipal liability claims against all defendants. Plaintiff asserts a deliberate indifference claim pursuant to section 1983 against the City Defendants. In addition, he asserts a claim for supervisory liability

against Strauss, Tepperberg, 10th Avenue, and FNI; assault and battery against Petters and other FNI and Club Marquee employees; negligent hiring, training, and retention against the City; and negligence against the City Defendants. Meanwhile, 10th Avenue, Strauss, and Tepperberg assert crossclaims against all the other defendants based on theories of contribution and indemnification.

All defendants have now moved to dismiss the claims against them.[1]

## II. DISCUSSION

### A. Motion to Dismiss Standard

On a Rule 12(b)(6) motion to dismiss a pleading for failure to state a claim, a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006); *S.E.C. v. Lyon*, 529 F. Supp. 2d 444, 449 (S.D.N.Y. 2007). However, to survive a motion to dismiss for failure to state a claim for relief, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). For a claim to be plausible, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.*

### B. Section 1983 Claims

To state a claim pursuant to section 1983, a plaintiff must show (1) the deprivation of rights, privileges, or immunities secured by the constitution and laws of the United States (2) by

---

[1] Defendants 10th Avenue, Strauss, and Tepperberg have submitted materials outside the complaint, as well as a Rule 56.1 statement, and have asked that the Court convert their motion pursuant to Rule 12(d) into one for summary judgment. The Court declines to do so and is not considering the extraneous material.

a person acting under color of state law. 42 U.S.C. § 1983. The second element requires a plaintiff to allege not only that he suffered a constitutional injury but that "he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir. 2002); *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 941 F.2d 1292, 1295-96 (2d Cir. 1991).

### *1.   State Action*

Plaintiff alleges that all defendants in this action acted under color of state law. To state a claim pursuant to section 1983 against the private parties—that is, defendants other than the City Defendants—plaintiff must demonstrate that their relevant conduct was "fairly attributable to the state . . . ." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003) (quotation marks and citation omitted). "For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *Cranley,* 318 F.3d at 111) (quotation marks omitted). "A nexus of 'state action' exists between a private entity and the state when 'the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies.'" *Id.* (quoting *Cranley,* 318 F.3d at 112) (quotation marks and alterations omitted). The close nexus requirement is meant to "assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Cranley,* 318 F.3d at 111

(quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (emphasis in original); *see also Horvath v. Westport Library Ass'n,* 362 F.3d 147, 154 (2d Cir. 2004).

Plaintiff offers three theories under which various private-party defendants should be considered state actors: 1) coercion by the City, 2) joint activity between Petters and the police officers, and 3) the City's delegation of a public function.  None of those theories carry the day.  In support of the first theory, plaintiff claims the Settlement between the City and 10th Avenue constitutes sufficient coercion to transform the private party defendants into state actors.  However, the complaint merely restates the terms of the Agreement without making any factual allegations of coercion by state actors.  This Court cannot draw a plausible inference that the Settlement was anything other than a voluntary agreement to resolve a legal dispute and establish conditions for the re-opening of Club Marquee.  Plaintiff's speculative, conclusory allegations of coercion by the City—which, in any event, are contained solely in Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss—are insufficient to state a claim that the private parties acted under color of state law.  *See Twombly*, 550 U.S. at 555.

Plaintiff's second theory is that Petters—the private security guard—willfully participated in joint action with agents of the state by having Michaels arrested.  Generally, private security guards hired by a business are not state actors under section 1983.  *See Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006); *Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004) (collecting caes).  And the furnishing of information by a private security guard to police officers who make an arrest typically does not constitute joint action under color of state law.  *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999).  However, joint activity with the state may occur "when the police arrest the suspect solely based on the security guard's request, without making any 'independent

investigation' of the matter." *Harris v. Sec. Co. of 1370 Sixth Ave.*, No. 94 Civ. 2599, 1996 WL 556927, at *3 (S.D.N.Y. Oct. 1, 1996); *see also Ginsberg*, 189 F.3d at 272 .

Here, Petters searched Michaels as he sought to enter the club, detained him based on her belief that he possessed illegal drugs, and contacted the police. She did not arrest him herself. The fact that Petters provided information to the police does not cloak Petters with state authority, even if that information turned out to be false. *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985) ("[P]roviding false information to an arresting officer is not, by itself, sufficient to state a claim against [a] private party under § 1983.")  Plaintiff's assertion that "[d]efendant Police Officers did not conduct an independent investigation of the circumstances leading to the Plaintiff's detention" (Am. Compl. ¶ 101) is conclusory and also inconsistent with other facts alleged in the complaint. Although the police officers are not alleged to have personally inspected the pills or conducted lengthy interviews, they allegedly spoke with Club Marquee and FNI personnel, (*id. ¶* 105), as well as with Michaels himself, at the club before arresting him, (*id. ¶¶* 108). Accordingly, Petters was not engaging in "joint activity" under color of state law when she detained Michaels and reported his suspicious activity to the police who conducted their own investigation at the scene and arrested him. *See Flagg*, 396 F.3d at 187

Plaintiff's third theory—that the City delegated the public function of law enforcement to the private-party defendants and therefore the private parties became state actors—also must be rejected. The U.S. Supreme Court has written that the "relevant question is not simply whether a private group is serving a 'public function[]' [but] whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). "While many

functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (citation omitted); *see also White v. Scrivner Corp.*, 594 F.2d 140, 142 (5th Cir. 1979).  The fact that private security companies provide security services to myriad stores, shopping malls, sports arenas, and businesses is a fact of modern life and demonstrates that security services have not been "exclusively reserved to the State." *Flagg Bros., Inc.*, 436 U.S. at 158.  Thus, the Settlement's unexceptional condition that 10th Avenue monitor Club Marquee for unlawful conduct and assist the police with law enforcement does not constitute delegation of a public function "exclusively reserved to the State." *Id.*

Because plaintiff's complaint fails to allege a sufficiently "close nexus," *Flagg*, 393 F.3d at 187, between the state and the private parties to bring the challenged actions of private parties under the color of state law, the section 1983 claims against 10th Avenue, Strauss, Tepperberg, FNI, Petters, and any unidentified employees of 10th Avenue or FNI, should be dismissed. *See Flagg*, 393 F.3d at 187.

### 2. *False Arrest and False Imprisonment*

As noted above, Michaels asserts false arrest and false imprisonment claims against the City Defendants.  Based on the face of the complaint, the police officers had probable cause to arrest Michaels, and the false arrest and false imprisonment claims should be dismissed.

In this Circuit, courts analyze false arrest and false imprisonment claims identically.  *See, e.g., Jenkins v. City of New York*, 478 F.3d 76, 88 n. 10 (2d Cir. 2007).  Where an arrest is made with probable cause, a section 1983 claim cannot be maintained.  *Jenkins*, 478 F.3d at 84 (existence of probable cause to arrest "is a complete defense to an action for false arrest") (citations, quotations omitted); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  The existence

9

of "'probable cause is evaluated under an objective standard,'" *Luzzi v. Mack,* No. 95 Civ. 9720, 1998 WL 150496, at *4 (S.D.N.Y. Mar. 31, 1998) (quoting *Hausman v. Fergus,* 894 F.Supp. 142, 147 (S.D.N.Y.1995)). In evaluating probable cause, courts look to the information available to the law enforcement officer at the time of the arrest and consider the "totality of the circumstances." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1982)).

Here, probable cause for the arresting officer to believe that plaintiff unlawfully possessed a controlled substance exists on the face of the complaint. The arresting officers learned from Petters that she had found loose pills on Michaels. Michaels acknowledged that those loose pills belonged to him. (Am. Compl. ¶¶ 82, 108.) Although he told Petters and the police officers that he had a prescription for the medication, nothing in the complaint suggests that he possessed any evidence of that prescription when he entered Club Marquee. Arresting officers do not have to credit or investigate an arrestee's self-serving claims. *See, e.g.*, *Curley v. Vill. Of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."). In the context of a nightclub with a recent history of illegal drug use, where a number of recent drug arrests had been made (Am. Compl. ¶ 11), and where the club had actually been shut down by the City due to illegal drugs on the premises (*id.*), it was objectively reasonable for the arresting officers to find probable cause that plaintiff possessed a controlled substance in violation of the law.[2] *See, e.g.*, *Curley*, 268 F.3d at 70 ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity.").

---

[2] Carrying a controlled substance such as Klonopin outside the original container in which it was dispensed violates New York Public Health Law section 3345. N.Y. Pub. Health § 3345 ("[I]t shall be unlawful for an ultimate user of controlled substances to possess such substance outside of the original container in which it was dispensed.").

Additionally, in considering the totality of the circumstances, the Court notes that the unexplained presence of cocaine in the immediate vicinity of plaintiff at the time of his arrest does not exactly detract from the existence of probable cause. Because there was probable cause, the false arrest and false imprisonment claims against the City Defendants should be dismissed. *See Jenkins*, 478 F.3d at 84.

### 3. *Malicious Prosecution*

"Freedom from malicious prosecution" has "long been" an established "constitutional right," *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor. *Posr v. Ct. Officer Shield # 207,* 180 F.3d 409, 417 (2d Cir. 1999).

In this case, it is undisputed that City officials initiated a prosecution against Michaels. Nevertheless, the malicious prosecution claim should be dismissed because the probable cause which led to Michaels' arrest did not dissipate before his arraignment the next morning. The City Defendants discovered no additional facts between the time of Michaels' arrest for possession of a controlled substance and the commencement of the prosecution. The City Defendants never actually saw Michaels' prescription prior to Michaels' arraignment. Because there was probable cause to initiate a prosecution, the malicious prosecution claim should be dismissed.

### 4. *Deliberate Indifference*

11

Plaintiff asserts that the City Defendants violated his Fourteenth Amendment substantive due process rights through their deliberate indifference to his serious medical needs. In evaluating a pretrial detainee's deliberate indifference claim brought pursuant to the Fourteenth Amendment, the Second Circuit applies the Eighth Amendment test for adequate medical care. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *Weyant*, 101 F.3d at 856. The deliberate indifference standard has both an objective and a subjective prong. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and citing *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). "Second, the charged official must act with a sufficiently culpable state of mind." *Hathaway*, 37 F.3d at 66. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In this case, Michaels fails to satisfy the first prong of the deliberate indifference test. He does not show, in objective terms, that a reasonable person would have known about his serious medical needs. Plaintiff alleges only that, while in custody, he requested his prescription medication for Crohn's disease. (Am. Compl. ¶ 129.) He does not allege that he showed any outward symptoms of the disease or that he otherwise conveyed to any City Defendant that he believed his condition was grave.

Moreover, the complaint indicates that Michaels was in fact able to receive his medication—albeit under certain conditions. These conditions—that he be "handcuffed to a stretcher and transferred to Bellevue [Hospital]," which would in turn allegedly delay his arraignment for four days, (*Id.* ¶ 130)—may well have created a dilemma for Michaels.

12

Nevertheless, Michaels himself made the decision to forgo his medication. In light of plaintiff's choice and the limited information available to the police officers about his medical needs, it has not been shown, on the basis of allegations in the complaint, that a reasonable City Defendant would have recognized that Michaels' medical condition was objectively sufficiently serious. *See Hathaway*, 37 F.3d at 66. Because the facts plaintiff alleges fail to rise to the level of a constitutional violation, his claim for deliberate indifference should be dismissed.

    *5.*  **Monell** *Liability*

Michaels also asserts claims for municipal liability pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), on the theory that the Settlement between 10th Avenue and the City represents a City policy. This City policy, in plaintiff's view, reflects a failure to train the City's officers and agents in how to conduct lawful searches. Because of a two-week gap in time between the initiation of new search procedures and the deadline for training on new search procedures, the City allegedly manifested deliberate indifference to the constitutional rights of citizens who would be searched upon entering Club Marquee.

To establish the City's liability, plaintiff must show that the City bore some responsibility for violations of his constitutional rights. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under section 1983 only where the municipality itself causes the constitutional violation at issue."). In other words, plaintiff must demonstrate both a constitutional violation and a sufficient causal relationship between the violation and a municipal policy or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983). Here, plaintiff's *Monell* claim fails, because plaintiff has not claimed that the Settlement is unconstitutional on its face, not pled facts sufficient to show that the private-party defendants acted under color of state law, and not

adequately alleged any deprivation of his constitutional rights. Absent a constitutional violation, no *Monell* liability can attach, even if plaintiff could demonstrate the existence of a City policy or practice. *See Canton*, 489 U.S. at 385. Thus, plaintiff's *Monell* claim should be dismissed.

6. ***State Law Claims***

In addition to section 1983 claims, plaintiff brings a variety of state law claims, such as claims for assault, battery, and negligence. Because all the claims arising under federal law should be dismissed for the reasons set forth above, this Court declines to exercise jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).

### III. CONCLUSION

Accordingly, this Court grants defendants' motions to dismiss the complaint.

Dated: New York, New York
February 16, 2011

SO ORDERED:

Sidney H. Stein, U.S.D.J.

14